

# IN THE MISSOURI COURT OF APPEALS
# WESTERN DISTRICT

| | | |
|---|---|---|
| KIM HUEBERT, | ) | |
| | ) | |
| Appellant, | ) | |
| | ) | |
| v. | ) | WD85737 |
| | ) | |
| CITY OF KANSAS CITY, | ) | Filed: April 18, 2023 |
| | ) | |
| Respondent. | ) | |

**Appeal from the Circuit Court of Cass County
The Honorable R. Michael Wagner, Judge**

**Before Division Two: Alok Ahuja, P.J., and
Anthony Rex Gabbert and Thomas N. Chapman, JJ.**

Kim Huebert filed earnings tax returns with the City of Kansas City in March 2022, seeking a refund of earnings taxes withheld from her paychecks during 2019 and 2020. The City denied Huebert's refund requests on the basis of a new ordinance passed in March 2022, which allowed taxpayers to apply for earnings tax refunds only for the current tax year.

Huebert then filed suit against the City in the Circuit Court of Cass County. The circuit court granted the City's motion to dismiss, which argued that Huebert's refund requests were untimely under the new ordinance. We hold that, under Article I, § 13 of the Missouri Consitution, the City could not retroactively shorten the period within which Huebert could seek a tax refund,

and thereby extinguish her refund claim. We accordingly reverse the circuit court's dismissal of Huebert's petition.

## Factual Background

Because this case was decided on a motion to dismiss, we recite the facts as alleged in Huebert's petition. *See Graves v. Mo. Dep't of Corr.*, 630 S.W.3d 769, 772 (Mo. 2021).

During 2019 and 2020, Kim Huebert worked as a licensed practical nurse for Maxim Healthcare Services, a company located in Overland Park, Kansas. Huebert lived in Amoret in Bates County, Missouri. While employed by Maxim, Huebert did not perform any services within the City of Kansas City; she primarily worked in Kansas. Although Huebert did not live or work in Kansas City, Maxim withheld a total of $565.04 in Kansas City earnings taxes from Huebert's wages in 2019 and 2020, and paid the money to the City.

On March 27, 2022, Huebert filed wage-earner tax returns with the City for 2019 and 2020, seeking a refund of the $565.04 withheld by Maxim from her paychecks.

Huebert's refund requests would have been timely under the law in effect prior to March 14, 2022. Prior to March 2022, § 68.393(a) of the Kansas City Code allowed taxpayers to request refunds of overpaid earnings taxes "within five years from the date when the return for the taxable year was due." On March 3, 2022, however, the City passed Ordinance 220164, which became effective on March 14, 2022. Ordinance 220164 amended City Code § 68.393(a) to deny taxpayers a refund "in the absence of a protest made and sustained pursuant to the requirements of RSMo § 139.031." Under § 139.031.1, RSMo, a taxpayer

2

seeking to protest their tax liability must "make full payment of the current tax bill before the delinquency date and file with the collector a written statement setting forth the grounds on which the protest is based." Although Huebert still had two or more years within which to file her refund requests under the version of City Code § 68.393(a) in effect prior to March 14, 2022, Huebert's refund requests were rendered untimely, and were completely extinguished, on the day the new ordinance became effective.[1]

On July 12, 2022, the City denied Huebert's refund claims. The City's Notices of Refund Denial explained:

> Ordinance No. 220164 was passed by the City Council on March 3, 2022 and became effective March 14, 2022. This ordinance amended § 68-393 of the Code of Ordinances which previously allowed taxpayers to submit a claim for an earnings tax refund for up to five years from the original due date of the tax year. The new ordinance does not contain this provision and only allows refunds for the current tax year. . . .

> Because the new ordinance was effective when your [2019 and 2020] Wage Earner return[s] w[ere] received, your refund request[s] ha[ve] been denied.

Huebert filed her Petition for Declaratory Judgment and Order for Refund in the Circuit Court of Cass County on July 27, 2022. She claimed that Ordinance 220164 could not be applied to bar her refund requests, because to do so would

---

[1] The City further amended Code § 68-393 on March 2, 2023. The current version of § 68-393(b) provides that "[a] request or claim for refund must be filed by the taxpayer on or before the due date of filing of the federal income tax return for such year." Neither party has argued that the version of Code § 68-393 enacted in March 2023 should apply to this case. Even if it did, it still appears to limit a taxpayer to filing a refund request *only* for the current tax year. Thus, the current version of Code § 68-393 would have the same effect on Huebert's refund requests as the version adopted in March 2022.

3

violate the prohibition on retrospective laws found in Article I, § 13 of the Missouri Constitution.

The City filed a motion to dismiss, arguing that Huebert did not have a vested right to a tax refund, or to pursue a tax refund claim, and that her refund claims were untimely under the new March 2022 ordinance.

On October 9, 2022, the circuit court granted the City's motion and dismissed Huebert's petition.

Huebert appeals.

## Discussion

Huebert argues that the circuit court erred in dismissing her petition, because Ordinance 220164 could not be applied retrospectively to extinguish her right to seek a refund of overpaid earnings taxes. We agree.

> "This Court reviews a circuit court's sustaining of a motion to dismiss de novo." In reviewing such a motion, the "Court must accept all properly pleaded facts as true, giv[e] the pleadings their broadest intendment, and construe all allegations" in the pleader's favor. A motion to dismiss for failure to state a claim tests only whether the petition adequately alleged facts that give rise to a cognizable cause of action or of a cause that might be adopted.

*Graves v. Mo. Dep't of Corrections*, 630 S.W.3d 769, 772 (Mo. 2021) (citations omitted).

Article I, Section 13 of the Missouri Constitution provides that "no[ ] law . . . retrospective in its operation . . . can be enacted."

> A law is retrospective *in operation* if it takes away or impairs vested or substantial rights acquired under existing laws or imposes new obligations, duties, or disabilities with respect to past transactions. [¶] Procedural and remedial statutes "not affecting substantive rights, may be applied retrospectively, without violating the constitutional ban on retrospective laws."

4

*Hess v. Chase Manhattan Bank, USA, N.A.*, 220 S.W.3d 758, 769 (Mo. 2007) (citations and internal quotation marks omitted).

City Code § 68.393(a), as amended in March 2022 by Ordinance 220164, essentially operates as a statute of limitation. By specifying that taxpayers cannot claim an earnings tax refund "in the absence of a protest made" under § 139.031, RSMo, the City Code incorporates the requirement of § 139.031.1 that a taxpayer seeking a refund must "make full payment of the current tax bill before the delinquency date and file with the collector a written statement setting forth the grounds on which the protest is based." Thus, Ordinance 220164 limits refund requests to the current tax year, and requires that those refund requests be filed by the "delinquency date," and at the same time as the taxpayer makes full payment. *See B&D Invmt. Co. v. Schneider*, 646 S.W.2d 759, 763 (Mo. 1983) (describing operation of § 139.031.1, RSMo); *Ford Motor Co. v. City of Hazelwood*, 155 S.W.3d 795, 799 (Mo. App. E.D. 2005) (same; citing *State ex rel. Nat'l Inv. Corp. v. Leachman*, 613 S.W.2d 634, 634-35 (Mo. 1981)). Refund claims for earlier tax years, and refund claims filed after the "delinquency date," are barred as untimely.

"As a general rule, statutes of limitation are considered procedural in nature. The constitutional bar against retrospective legislation has traditionally not been applied to procedural laws and as such, statutes of limitation may be applied retroactively." *Ferdinand v. State*, 480 S.W.3d 330, 333 (Mo. App. W.D. 2016) (citations and footnote omitted).

The rule that statutes of limitation are considered procedural, and therefore can be applied retroactively, is subject to two important exceptions,

however.  First, a newly enacted statute of limitations may not be employed to *revive* a cause of action which was already time-barred:

> "[O]nce the original statute of limitations expires and bars the plaintiff's action, the defendant has acquired a vested right to be free from suit, a right that is substantive in nature, and therefore, *article I, section 13*, prohibits the legislative revival of the cause of action."

*Doe v. Phillips*, 194 S.W.3d 833, 851 (Mo. 2006) (quoting *Doe v. Roman Catholic Diocese*, 862 S.W.2d 338, 341 (Mo. banc 1993)); *accord, W.B. v. M.G.R.*, 955 S.W.2d 935, 937 (Mo. 1997).

A second, equally important exception holds that a new statute of limitations cannot *extinguish* causes of action which were viable on the date the new statute became effective, *unless* the new statute gives existing claimholders a reasonable time within which to assert their rights after the new statute's effective date.  As the Supreme Court explained in *Goodman v. St. Louis Children's Hospital*, 687 S.W.2d 889 (Mo. 1985):

> [Substantial authority] hold[s] that statutes of limitations are procedural and that there is no vested right in the maintenance in force of the statute in effect when the claim accrued.  It is possible to shorten the statute of limitations applicable to an existing claim.  *If any such attempt is made, however, those who have pending and unbarred claims at the time the new statute becomes effective must be afforded a reasonable time within which to file suit.*

*Id.* at 891 (emphasis added).

In *Goodman*, the Supreme Court refused to apply a new statute of limitations for medical malpractice claims which became effective in August 1976, where application of the new statute would have extinguished a minor plaintiff's claim on the date the statute became effective, even though the claim was otherwise viable at that time.  Other cases similarly hold that a new statute of limitations cannot operate to immediately bar existing claims which were viable

6

on the date of enactment, unless a reasonable time is afforded to existing claimants to file suit following the new statute's enactment. *See*, *e.g.*, *North Supply Co. v. Dir. of Revenue*, 29 S.W.3d 378, 380 (Mo. 2000) (recognizing *Goodman*'s holding that, where "a new statute of limitations . . . reduce[s] a limitation period after claims ha[ve] accrued, . . . persons with accrued and unbarred claims must be afforded a reasonable time within which to file suit"); *Tice v. Fleming*, 72 S.W. 689, 691 (Mo. 1903); *Cranor v. Sch. Dist. No. 2*, 52 S.W. 232, 233 (Mo. 1899); *Swartz v. Swartz*, 887 S.W.2d 644, 650 (Mo. App. W.D. 1994).

The Missouri Supreme Court has applied these principles in an analogous situation. In *North Supply*, after the Supreme Court of the United States declared a Missouri use tax to be unconstitutional, the State repealed the statute imposing the use tax. *See* 29 S.W.3d at 378-79. This legislative action *also* repealed the statutory provisions which authorized taxpayers to seek refunds of erroneously collected use taxes. *Id.* at 379. The Missouri Supreme Court held that the legislature could not eliminate taxpayers' preexisting right to seek refunds of unlawfully collected taxes. It explained that,

> [o]n this general question, the United States Supreme Court has held that the Due Process Clause requires states to "provide taxpayers with, not only a fair opportunity to challenge the accuracy and legal validity of their tax obligation, but also a 'clear and certain remedy' . . . for any erroneous or unlawful tax collection to ensure that the opportunity to contest the tax is a meaningful one."

*Id.* (quoting *McKesson v. Div. of Alcoholic Beverages & Tobacco*, 496 U.S. 18, 39 (1990)). The Court likened the situation to one in which a statute of limitations was shortened by a new enactment, and had the effect of extinguishing an existing cause of action. *Id.* at 380. As in the cases involving a shortened statute

7

of limitations, the Court held that the taxpayer in *North Supply* "should have been afforded a reasonable time after repeal of the statute to apply for a refund." *Id*.

The reasoning of *North Supply* is directly applicable here. The City could not pass an ordinance which had the effect of immediately extinguishing Huebert's preexisting right to seek an earnings tax refund, without providing Huebert a reasonable opportunity to file her refund request following the new ordinance's effective date.

The City cites *La-Z-Boy Chair Co. v. Director of Economic Development*, 983 S.W.2d 523 (Mo. 1999), to contend that Huebert had no vested right in the specific Code provisions which authorized an earnings tax refund. *La-Z-Boy* involves a completely different situation, however. In *La-Z-Boy*, a taxpayer contended that the legislature could not change favorable tax statutes *prospectively*, because of the investments which the taxpayer had previously made in reliance on the earlier, favorable tax treatment. The Supreme Court in *La-Z-Boy* rejected the taxpayer's claim that the General Assembly could not amend the tax laws on a going-forward basis. The Court invoked the principle that a "vested right" "'must be something more than a mere expectation based upon an anticipated continuance of the existing law.'" *Id*. at 525. Here, however, Huebert is not contending that the City had no right to change its earning tax ordinances *prospectively*; she merely argues that the City could not *retroactively* change the tax treatment of her *prior* conduct. *La-Z-Boy* is irrelevant to this issue.

The other cases the City cites are distinguishable for the same reason: they involve statutes which operated *prospectively*, not *retrospectively* to divest a citizen of vested rights. Thus, in *Beatty v. State Tax Commission*, 912 S.W.2d 492 (Mo. 1995), the Missouri Supreme Court held that a new statute re-defining "residential property" for property tax purposes operated only prospectively, because the statute became effective before the current year's property taxes were levied. The Court emphasized that, under Missouri's property-tax statutes, "rights to a particular amount of tax do not vest in a taxpayer until assessment and levy are complete. At this point the government's lien becomes 'a fixed encumbrance' . . ., and the taxpayer's liability for tax is reduced to a sum certain." *Id.* at 497. Similarly, in *Cosada Villa of Missouri, Inc. v. Missouri Department of Social Services*, 868 S.W.2d 157 (Mo. App. W.D. 1994), the court noted that a challenged regulation "only has application prospectively in regard to future [Medicaid] reimbursement rates." *Id.* at 160.

The City's attempt to eliminate Huebert's right to a refund of earnings taxes for which she is not liable would retrospectively increase her tax liability for 2019 and 2020, beyond the liability she faced under the laws in effect at the time. Huebert's argument that Ordinance 220164 cannot lawfully be applied to her requests for refunds for 2019 and 2020 is supported by the many cases which hold that the government cannot increase taxpayers' income-tax liability retrospectively, *after* the time period to which the new tax law will be applied. *See, e.g.*, *In re Armistead*, 245 S.W.2d 145, 151–52 (Mo. 1952); *First Nat'l Bank of St. Joseph v. Buchanan Cnty.*, 205 S.W.2d 726, 730–31 (Mo. 1947); *Graham*

9

*Paper Co. v. Gehner*, 59 S.W.2d 49, 50–51 (Mo. 1933); *State ex rel. Kolen v. Southwestern Bell Tel. Co.*, 292 S.W. 1037, 1038 (Mo. 1927).

Ordinance 220164 cannot be invoked to extinguish Huebert's preexisting right to apply for a refund of the withheld earnings taxes, without giving her a reasonable time after the ordinance's adoption within which to file her claims. The City was not entitled to dismissal on the basis that Huebert's refund claims were barred by the new ordinance.

### Conclusion

The judgment of the circuit court is reversed, and the case is remanded for further proceedings consistent with this opinion.

_____
Alok Ahuja, Judge

All concur.